# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 17 2016, 9:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Deidre R. Eltzroth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jeffrey S. Heironimus, *Appellant-Defendant,* | October 17, 2016 |
| v. | Court of Appeals Case No. 82A01-1602-PC-394 |
| | Appeal from the Vanderburgh Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable David D. Kiely, Judge |
| | The Honorable Kelli E. Fink, Magistrate |
| | Trial Court Cause No. 82C01-1306-PC-17 |

**Barnes, Judge.**

# Case Summary

[1] Jeffrey Heironimus appeals the post-conviction court's denial of his petition for post-conviction relief. We affirm.

# Issues

[2] Heironimus raises two issues, which we restate as:

> I.  whether he received effective assistance of trial counsel; and
>
> II. whether he received effective assistance of appellate counsel.

# Facts

[3] In May 2011, Heironimus robbed the First Federal Savings Bank in Evansville. While talking to a bank employee, he insinuated that he had a gun by keeping his hand in his backpack and demanding money. He took over $3900 in cash, which included $200 in recorded bait money. The State charged Heironimus with Class C felony robbery and alleged that he was an habitual offender. With respect to the robbery charge, the State alleged that Heironimus "did knowingly and by threat of force" take property from a bank employee. Direct Appeal App. p. 42. Heironimus was convicted of robbery and found to be an habitual offender. He appealed his conviction, challenging the trial court's admission of evidence of witness identifications made of him after police officers' warrantless entry into an accomplice's residence. We affirmed. *See Heironimus v. State*, No. 82A01-1204-CR-152 (Ind. Ct. App. Nov. 1, 2012).

[4] Heironimus then filed a petition for post-conviction relief, which was later amended. He argued that his trial counsel was ineffective for failing to file a motion for directed verdict and that his appellate counsel was ineffective for failing to argue on appeal that the evidence was insufficient to sustain the conviction. Both arguments concerned the State's allegation that Heironimus took property from the bank employee by "threatening the use of force" rather than "by putting any person in fear." *See* Ind. Code § 35-42-5-1. After a hearing, the post-conviction court denied Heironimus's petition. The post-conviction court entered findings of fact and conclusions thereon denying Heironimus's petition. Heironimus now appeals.

## Analysis

[5] Heironimus argues that the post-conviction court's denial of his petition is clearly erroneous. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009) (citing Ind. Post-conviction Rule 1(6)). "The findings must be supported by facts and the conclusions must be supported by the law." *Id.* Our review on appeal is limited to these findings and conclusions. *Id.* Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative judgment. *Id.* (citing P-C.R. 1(5)). "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" *Id.* (quoting *Allen v. State*, 749 N.E.2d 1158, 1164 (Ind. 2001), *cert.*

*denied*). Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Id.*

## I. Ineffective Assistance of Trial Counsel

Heironimus argues that the post-conviction court was clearly erroneous when it determined that he was not denied effective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *cert. denied*. A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

According to Heironimus, his trial counsel was deficient for failing to file a motion for directed verdict regarding the robbery charge. In order for a trial court to grant a directed verdict, there must be a complete lack of evidence on a material element of the crime or the evidence must be without conflict and susceptible to only an inference in favor of the defendant's innocence. *Huber v. State*, 805 N.E.2d 887, 890 (Ind. Ct. App. 2004). At the time of the offense, Indiana Code Section 35-42-5-1 provided: "A person who knowingly or intentionally takes property from another person or from the presence of another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery, a Class C felony." The State alleged that Heironimus knowingly took property from the bank employee by threatening force against the employee. Heironimus argues that a motion for directed verdict would have been granted because there was no evidence to show that he threatened the use of force against the bank employee.

On this issue, the post-conviction court found:

> 2. Petitioner's first claim was that he was denied the effective assistance of trial counsel due to omissions and errors of trial counsel that undermined confidence in the outcome of the case. The specific facts alleged by Petitioner to support this first claim were that Petitioner was charged and convicted of robbery for having taken money from a bank teller "by using or threatening the use of force," but that the evidence at trial failed to support this element of the charge. Petitioner's claim is that if counsel had moved for a directed verdict on this issue, there is a reasonable probability that this argument would have been

successful and Petitioner would not have been convicted of robbery.

3. The charging information in Petitioner's case alleges that the offense was committed "by threat of force," but does not allege the actual "use of force."

* * * * *

11. Mr. Gooden [trial counsel] testified that he was aware during trial of the issue regarding the sufficiency of the evidence on the threat of force element. However, he did not want to bring the issue to the attention of the State so the prosecutor could then fix the issue. Mr. Gooden also indicated based on his past experiences, he did not believe that a motion for directed verdict would be successful. As trial counsel, Mr. Gooden's decision not to move for a directed verdict was one of strategy.

12. Even if Mr. Gooden had moved for a directed verdict, it is unlikely that his motion would have been successful.

App. Vol. II pp. 90, 92.

[9] Relying on *Simmons v. State*, 455 N.E.2d 1143 (Ind. Ct. App. 1983), and *Maga v. State*, 508 N.E.2d 803 (Ind. 1987), the post-conviction court also concluded:

17. The teller in Petitioner's case testified that the suspect who robbed the bank had his hood pulled up so that he [sic] his face was only partially visible and his hair could not be seen. The man put a backpack up on the teller station, and the man had one hand in the

backpack which led the teller to believe that the man might have a gun in the backpack. The man told the teller that he wanted her to put money in the backpack and told her not to push any alarms. After the teller put money in the backpack, the man indicated he wanted even more money. The teller testified that she was terrified, very scared and very nervous at the time. She also described her state as hysterical.

18. Petitioner's attempt to conceal his appearance, the fact that he put his hand in his backpack when he asked for money, and that he told the teller to give him money and not to push any alarms all support the jury's finding that the offense was committed by the "threat of force." Petitioner's behavior understandably made the teller feel terrified, scared and nervous and also understandably led the teller to believe that Petitioner had a gun. Petitioner's words and gestures, along with the appearance that he might have a gun, establish the element of "threat of force."

App. Vol. II pp. 93-94.

[10] We addressed a similar issue in *Simmons*, 455 N.E.2d at 1147-48. There, the defendant robbed a liquor store by demanding money and putting his hand to a bulge at his waist, which the manager thought was a gun. However, when the defendant was arrested minutes later, the police found no weapon. The jury found him guilty of Class C felony robbery by using or threatening the use of force. On appeal, this court engaged in a lengthy analysis of the statutory language, the prior statute's language, and case law on the issue. We concluded that the defendant's "words, the bulge under his shirt, and his gestures toward

that bulge, all creating the inference he possessed a gun, were sufficient to indicate he was threatening the use of force upon [the manager]." *Simmons*, 455 N.E.2d at 1148. Citing *Simmons*, our supreme court later noted that "[t]he threat of force can be established through the appearance that a person had a gun, and by the words and gestures of the person." *Maga v. State*, 508 N.E.2d 803, 804 (Ind. 1987); *see also Gray v. State*, 903 N.E.2d 940, 946 (Ind. 2009) (directing the entry of a conviction for Class C felony robbery rather than a Class B felony robbery where the defendant implied that he had a gun in his pocket but there was no evidence that he actually had a weapon).

[11] Here, the bank employee testified that Heironimus entered the bank wearing a hooded sweatshirt with the hood pulled up over his head so that she could not see much of his face. He was carrying a backpack and had his left hand inside the backpack. He put his backpack on the counter and told the teller to give him all of the money and not to push any alarms. Based on the position of the backpack and his hand, the teller thought that "he had perhaps a gun in it." Tr. p. 24. She was "terrified, very scared, just very nervous." *Id.* at 25. Heironimus argues that the teller "seemed to realize that he was not armed soon thereafter when he passed the bag to her." Appellant's Br. p. 8.

[12] For a motion for directed verdict to be successful, there must have been a complete lack of evidence regarding threatening the use of force or the evidence must be without conflict and susceptible to only an inference in favor of the Heironimus's innocence. *Huber*, 805 N.E.2d at 890. As in *Simmons*, Heironimus's words and actions implied that he had a gun and were sufficient

to indicate he was threatening the use of force upon the teller. Consequently, even if his trial counsel had filed the motion for directed verdict, there is no reasonable probability that the motion would have been successful or that the result of the proceeding would have been different. The trial court's denial of Heironimus's petition for post-conviction relief on this issue is not clearly erroneous.

## II. Ineffective Assistance of Appellate Counsel

[13] Next, Heironimus argues that he was denied effective assistance of appellate counsel. The standard for gauging appellate counsel's performance is the same as that for trial counsel. *Allen*, 749 N.E.2d at 1166. Heironimus must demonstrate that his appellate counsel was deficient and that he was prejudiced by the deficient performance. *Ben-Yisrayl*, 729 N.E.2d at 106.

[14] Heironimus argues that his appellate counsel should have raised a claim that the evidence was insufficient to sustain the conviction for robbery. Because the strategic decision regarding which issues to raise on appeal is one of the most important decisions to be made by appellate counsel, appellate counsel's failure to raise a specific issue on direct appeal rarely constitutes ineffective assistance. *See Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999). The Indiana Supreme Court has adopted a two-part test to evaluate the deficiency prong of these claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997), *cert. denied*. If this analysis demonstrates deficient performance by counsel, the court then

examines whether the issues that appellate counsel failed to raise "would have been clearly more likely to result in reversal or an order for a new trial." *Id.*

[15] Specifically, Heironimus argues that appellate counsel should have argued that the evidence was insufficient to show that he threatened the use of force. On this issue, the post-conviction court found:

> 19. Petitioner's second argument . . . was that Petitioner received ineffective assistance of appellate counsel when counsel failed to challenge the conviction appropriately, relying instead, on a non-meritorious argument. In the facts alleged to support this second argument, Petitioner contends that if appellate counsel had argued that the State lacked sufficient evidence to convict Petitioner of the robbery charge, there is a reasonable probability that Petitioner's robbery conviction would have been overturned and the sentence vacated. This argument is also based on the claim that there was not enough evidence of the "threat of force."
>
> * * * * *
>
> 22. Because this Court has found in favor of the State as to the sufficiency of the evidence issue, this Court finds that it was not ineffective for appellate counsel to fail to raise the issue on appeal.

App. Vol. II pp. 94-95.

[16] Even if Heironimus's appellate counsel had raised the sufficiency issue, we cannot say the argument would have been successful. When reviewing the

sufficiency of the evidence needed to support a criminal conviction, we consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). We affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.* As we have noted, based on Heironimus's words and actions, there was evidence to support the jury's finding that he threatened the teller with force. *See Simmons*, 455 N.E.2d at 1148. The sufficiency issue would not have been clearly more likely to result in reversal. The post-conviction court's denial of Heironimus's argument on this issue is not clearly erroneous.

## Conclusion

[17] The post-conviction court's denial of Heironimus's petition for post-conviction relief is not clearly erroneous. We affirm.

[18] Affirmed.

Riley, J., and Bailey, J., concur.