**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JOHN PINNOW**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

FILED
Dec 09 2013, 9:59 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDWARD R. HOFFMAN, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1307-PC-587 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable John M. Feick, Judge
Cause No. 18C04-0512-FB-26 (18C04-1008-PC-1)

December 9, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Edward R. Hoffman ("Hoffman") appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred when it found that he was not denied the effective assistance of appellate counsel on his direct appeal. We restate his contention as the three following issues:

I. Whether the post-conviction court erred when it found that Hoffman failed to prove his appellate counsel was ineffective for not ensuring the DVD of his statement to police was included in the record on direct appeal;

II. Whether the post-conviction court erred when it found that Hoffman failed to prove ineffective assistance of appellate counsel for not arguing that the trial court erroneously relied on Hoffman's lack of remorse when it sentenced him; and

III. Whether the post-conviction court erred when it found that Hoffman failed to prove his appellate counsel was ineffective for not making a sufficient argument that his sentence was inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts supporting Hoffman's convictions as set forth by this court on his direct appeal are as follows:

During February 2005, Hoffman returned from overseas to Gaston, Indiana, to be with his ailing mother. His mother was a close friend of Theresa Critzman's, stepmother of then thirteen-year-old T.C. When Hoffman's mother died, he continued to live in her home, located about two blocks from T.C.'s home. He quickly developed a close relationship with the Critzman family and was with them almost daily. Hoffman was in the military and, after moving back, also became a volunteer fireman for the town. T.C.'s father and stepmother thought Hoffman was a good role model for their son, and T.C. looked up to Hoffman and trusted him. Hoffman tutored T.C. in math at the end of the 2005 school year. T.C.'s parents frequently allowed (and even encouraged) T.C. to spend time alone with

2

Hoffman, as T.C. had been having disciplinary issues at school and was eventually expelled.

On one occasion in late spring or early summer of that year, soon after T.C. turned fourteen, Hoffman took T.C. and other children to the movies. T.C. then spent the night at Hoffman's home. After Hoffman's niece went to bed, he and T.C. retired to Hoffman's room and closed the door. They watched a movie on Hoffman's laptop computer. Later, Hoffman observed T.C. looking at pornography on the computer, so he (Hoffman) entered a search word that caused more pornographic images to appear on the screen. He then began to wrestle with T.C., which ultimately resulted in him rubbing his pelvis against T.C. and telling the child he was "horny." *Tr.* at 80. He then asked T.C. to remove his pants. When T.C. refused, Hoffman threatened to tell T.C.'s parents that he had been caught looking at pornography.

T.C. eventually complied with Hoffman's request. After rubbing baby oil on his and T.C.'s genitals, Hoffman attempted to insert his penis into T.C.'s anus. Unable to achieve penetration, Hoffman rubbed his naked pelvis against T.C. until Hoffman ejaculated on T.C.'s stomach.

Later that summer, Hoffman moved out of his deceased mother's home and paid T.C. to help him pack and unpack. On one occasion while helping, T.C. spent the night at Hoffman's new home. While T.C. was using Hoffman's computer, Hoffman inserted a pornographic DVD into the computer for T.C. to watch. The DVD depicted a policeman engaging in sexual activity with another man. Hoffman told T.C., "you should learn from this." *Id.* at 87. Hoffman proceeded to disrobe, "g[e]t on top of" T.C., and rub his pelvis against T.C. *Id.* He then told T.C. that they should "take it to the shower." *Id.* While in the shower with T.C., Hoffman rubbed body wash on his and T.C.'s genital areas and again attempted anal intercourse. Unable to penetrate T.C., Hoffman performed oral sex on T.C. and inserted his finger into T.C.'s anus. After this episode, T.C. asked Hoffman to stop doing this, and Hoffman agreed.

On a later date, however, T.C. once again spent the day and night at Hoffman's home. During his visit, T.C. observed Hoffman looking at homosexual pornography involving a military theme. Thereafter, he purchased two pornographic movies for T.C. from a website. Later that night, Hoffman began rubbing his pelvis against T.C. After lubricating with baby oil, Hoffman then inserted his penis into T.C.'s anus. Hoffman, who was not wearing a condom, ejaculated into the fourteen-year-old child's anus.

At the end of summer, T.C. began attending the Youth Opportunity Center (the YOC), a school for expelled youth. Hoffman offered to drive T.C. to the YOC each day, and T.C.'s parents accepted. During the daily trips to school, Hoffman often spoke with T.C. about the offenses. He warned T.C. that if he told his counselor at the YOC what had happened, Hoffman would go to jail for a long period of time.

In mid-September, T.C. ran away from home and was sent to live at the YOC on a full-time basis after he was retrieved by police. Thereafter, Hoffman attempted to visit T.C. at the YOC on one occasion and several times expressed to T.C.'s parents a desire to visit him. When T.C. learned that Hoffman planned to visit him over Thanksgiving with T.C.'s family, T.C. acted out. In December, T.C. finally told his counselor about the sexual encounters with Hoffman.

After T.C. spoke with an officer of the Delaware County Sheriff's Department (the DCSD), the DCSD searched Hoffman's home pursuant to a warrant on December 16, 2005. Police recovered, among other things, several pornographic DVDs, a laptop computer, and a bottle of baby oil. On December 22, the State charged Hoffman with three counts of sexual misconduct with a minor as class B felonies (Counts 1, 2, and 3), attempted sexual misconduct with a minor as a class B felony (Count 4), sexual misconduct with a minor as a class C felony (Count 5), and dissemination of matter harmful to minors as a class D felony (Count 6).

Hoffman's two-day jury trial commenced on September 11, 2006. T.C. testified regarding the three separate episodes of sexual conduct, as set forth above. Further, the trial court admitted into evidence, over Hoffman's objection, three pornographic DVDs that were recovered from Hoffman's bedroom during the search.

. . . .

The jury found Hoffman guilty as charged. At the sentencing hearing on November 1, 2006, the trial court noted, "I was here during the whole trial and observed the demeanor of the Defendant and he had the same, sullen look that he has right now. And I see no remorse whatsoever." *Id.* at 251. Further, in its subsequent sentencing order the trial court set forth the following aggravating and mitigating circumstances:

4

Mitigating Circumstances:

> 1. The defendant led a law-abiding life for a substantial period of time before commission of the crimes.
> 2. These are the defendant's first Felony convictions.

> Aggravating Circumstances:

> 1. There was a substantial degree of care and planning on the part of the defendant in the commission of the crimes.
> a) The defendant's role was that of a principal.
> b) The defendant carefully arranged several overnight occasions, designed to allow him to be alone with the victim for extended periods of time.
> 2. The Court finds that the facts of the crime are particularly heinous or disturbing due to the repeated and progressive nature of the occurrences over a significant time period.
> 3. The Court finds that the defendant is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility.
> 4. The Court considers the crime to be particularly devastating to the victim, his family members, and/or relatives.
> 5. The Court finds that the defendant was in a position of trust, having care, temporary custody, or control of the victim of the offense.
> 6. The Court also considers that the Defendant was a member of the armed forces who was trained to protect, not molest, the citizens of the United States.

*Appellant's App.* at 212–13. The court found that the aggravators outweighed the mitigators and sentenced Hoffman to thirteen years in prison for each of the four class B felony convictions (Counts 1–4), six years for the class C felony conviction (Count 5), and two years for the class D felony conviction (Count 6). The court further ordered the sentences for all six counts to be served consecutively because the offenses were "separate and distinct acts" and because of his "contact with the victim at [the YOC] and his attempts to have the victim remain silent." *Id.* at 212.

*Hoffman v. State*, 18A02-0611-CR-1044 (Ind. Ct. App. Oct. 17, 2007). Attorney Louis

Denney ("Denney") acted as both Hoffman's trial counsel and his appellate counsel.

On November 17, 2006, Denney, on behalf of Hoffman, filed a notice of appeal with the trial court, in which he requested "all hearings of record, including exhibits, and then in bold, . . . entire record." *Tr.* at 12. Hoffman's videotaped statement to the police was not included in the direct appeal record. In Hoffman's direct appeal, the following issues were raised: (1) abuse of discretion in the admission of two pornographic DVDs; (2) a claim of double jeopardy; and (3) a claim that his sentence was inappropriate. A panel of this court, in an unpublished decision on October 17, 2007, affirmed Hoffman's convictions and sentence.

On August 13, 2012, Hoffman, pro se, filed a petition for post-conviction relief. On November 15, 2012, through counsel, he filed an amended petition, alleging that he was denied the effective assistance of appellate counsel because Denney failed to ensure that the DVD of Hoffman's interview with police was included in the direct appeal record, failed to argue that the trial court erroneously relied on Hoffman's lack of remorse when it sentenced him, and failed to sufficiently argue that Hoffman's sentence was inappropriate. An evidentiary hearing was held, and on June 18, 2013, the post-conviction court issued its findings of fact, conclusions thereon, and judgment and denied Hoffman's petition for post-conviction relief, concluding that he received the effective assistance of appellate counsel. Hoffman now appeals.

**DISCUSSION AND DECISION**

Hoffman argues that the post-conviction court erroneously denied his petition for relief. Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable

6

at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct App. 2006), *trans. denied*, *cert. denied,* 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id.* We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

Hoffman contends that he received the ineffective assistance of his appellate counsel. The standard of review for a claim of ineffective assistance of appellate counsel is the same as that for trial counsel. *Massey v. State*, 955 N.E.2d 247, 257 (Ind. Ct. App. 2011) (citing *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997), *cert. denied*, 525 U.S.

7

1021 (1998)). The petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that but for appellate counsel's deficient performance, there is a reasonable probability that the result of the appeal would have been different. *Id*. at 257-58 (citing *Overstreet v. State*, 877 N.E.2d 144, 165 (Ind. 2007), *cert. denied*, 555 U.S. 972 (2008)). As with ineffective assistance of trial counsel claims, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id*. at 258 (citing *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002)). There are three different grounds for claims of ineffective assistance of appellate counsel: (1) counsel's actions denied the defendant access to appeal; (2) counsel failed to raise issues on direct appeal resulting in waiver of those issues; and (3) counsel failed to present issues well. *Id*. (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1203 (Ind. 2001), *cert. denied*, 535 U.S. 1019 (2002)).

## I. Failure to Include Exhibit on Direct Appeal

Hoffman argues that his appellate counsel was ineffective for failing to ensure that a DVD recording of his pretrial statement to the police be included in the record on direct appeal. He contends that the omission of this statement prevented a challenge to a finding of his lack of remorse for the crimes because, on the pretrial statement, he maintained his innocence.

Denney filed a notice of appeal with the trial court in which he requested "all hearings of records [sic], including exhibits, and then in bold, . . . entire record." *Tr*. at 12. The court reporter prepared the trial transcript and the volume of exhibits to be sent to this

8

court on direct appeal. The exhibit volume contained copies of the documentary evidence, but there were several non-documentary exhibits, including three pornographic DVDs and the DVD recording of Hoffman's pretrial statement to the police that were not included in the exhibit volume. Instead of including the actual DVDs in the exhibit volume, the court reporter, interpreting Indiana Appellate Rule 29(B)[1] as excluding DVDs as documentary exhibits, included a photocopy of the front of each DVD instead. Denney did not specifically ensure that the actual DVD of Hoffman's statement to the police was sent with the rest of the record to this court. When asked during the evidentiary hearing on Hoffman's petition for post-conviction relief about his failure to make sure that the DVD was given to this court, Denney responded, "I would not have particularly wanted them to review it since I thought one of his biggest issues on appeal was whether his sentence was appropriate or not. I don't think that, and the stuff contained in that, would have in any way helped . . . Hoffman." *Id*. at 15. The post-conviction court found that Hoffman failed to prove that Denney's performance was deficient or how Hoffman was prejudiced by such performance.

Hoffman relies on *Harris v. State*. 861 N.E.2d 1182 (Ind. 2007), for his proposition that counsel's performance is deficient when pertinent parts of the record are not included in the record on appeal. However, *Harris* is distinguishable from the present case because, in that case, appellate counsel was found to be ineffective when counsel failed to provide

---

[1] Indiana Appellate Rule 29(B) states: "Nondocumentary and oversized exhibits shall not be sent to the Court, but shall remain in the custody of the trial court . . . during the appeal. Such exhibits shall be briefly identified in the Transcript where they were admitted into evidence. Photographs of any exhibit may be included in the volume of documentary exhibits."

the Court of Appeals with the entire trial transcript, where the argument on appeal focused on whether the defendant's two crimes arose out of a single episode of criminal conduct and, therefore, whether his sentence should have been capped by statute. *Id*. at 1187-89. Here, Denney did not fail to include the entire trial transcript; instead, only one exhibit was not included based on the operation of an appellate rule. Further, Denney stated that he would have preferred that the Court of Appeals not view the DVD since he did not think it would have helped Hoffman's case. *Tr*. at 15.

We conclude that Hoffman has failed to prove that he was prejudiced by Denney's failure to ensure that the DVD was included in the record on direct appeal. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Massey*, 955 N.E.2d at 258. Hoffman has failed to prove that there is a reasonable probability that, but for his counsel's error, the result of his direct appeal would have been different. During the post-conviction evidentiary hearing, Denney testified that, in his opinion, the DVD of Hoffman's statement would not have been helpful to Hoffman's case on appeal. *Tr*. at 15. Denney characterized some of Hoffman's statement on the DVD to be "beyond incrimination . . . extremely incriminating." *Id*. Hoffman was charged with and convicted of crimes concerning him having sexual relations with a fourteen-year-old boy. In his interview with the police, Hoffman admitted that the victim spent the night at Hoffman's house and that, during those overnight visits, he and the victim stayed up late and "messed around, wrestled and stuff." *Pet'r's Ex*. 5. Hoffman admitted that, on more than one occasion, the victim slept in the same bed as Hoffman. *Id*. Further, when confronted with the accusation that he had sexual relations with the fourteen-

10

year-old victim, Hoffman denied the accusation, but stated, "I wouldn't mind, if he were older, he is a good looking kid, yes." *Id.* Although this statement contains a general denial of guilt, it is hard to see how it could have helped to show Hoffman's good character or mitigate the crimes he committed. Hoffman has not shown that there is a reasonable probability that the result of his direct appeal would have been different had this exhibit been included in the record on direct appeal and been viewed by this court.

## II. Lack of Remorse as an Aggravating Circumstance

Hoffman contends that his appellate attorney was ineffective for failing to challenge the trial court's reliance on his lack of remorse as an aggravating circumstance. He asserts that because his pretrial statement to the police was not included in the direct appeal record, his appellate counsel could not challenge the use of the lack of remorse. Hoffman claims that he maintained his innocence in his pretrial statement and that the trial court therefore should not have used his lack of remorse for sentencing purposes. He argues that the erroneous consideration of his lack of remorse was clearly a stronger issue than two of the arguments his appellate counsel raised on appeal, and his appellate counsel was ineffective for not raising such in his direct appeal.

"Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal." *Reed v. State*, 856 N.E.2d 1189, 1196 (Ind. 2006). This is so because the choice of what issues to raise on appeal is one of the most important strategic decisions appellate counsel makes. *Massey,* 955 N.E.2d at 258 (citing *Stevens v. State*, 770 N.E.2d 739, 760 (Ind. 2002), *cert. denied,* 540 U.S. 830 (2003)). To establish deficient performance for failing to raise an issue, the petitioner must

11

show that the unraised issue was significant and obvious on the face of the record and that it was clearly stronger than the issues raised. *Id.* (citing *Fisher v. State*, 810 N.E.2d 674, 677 (Ind. 2004)). "'We give considerable deference to appellate counsel's strategic decisions and will not find deficient performance in appellate counsel's choice of some issues over others when the choice was reasonable in light of the facts of the case and the precedent available to counsel at the time the decision was made.'" *Brown v. State*, 880 N.E.2d 1226, 1230 (Ind. Ct. App. 2008) (quoting *Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999)), *trans. denied.* We must consider the totality of an attorney's performance and "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy." *Reed*, 856 N.E.2d at 1195-96.

Here, the trial court conducted a two-stage sentencing, where it first had to determine if Hoffman was a sexually violent predator. In its determination, the trial court stated:

> As for the first part of sentencing, I'm going to declare him a sexually violent predator. I realize the two reports, they differ a little bit with that, but I was here during the whole trial and observed the demeanor of the Defendant and he had the same, sullen look that he has right now. And I see no remorse whatsoever. He will register, pursuant to statute.

*Trial Tr.* at 251. After ordering Hoffman to register, the trial court stated that whatever sentence it handed down would be served consecutively because of the separate acts for which Hoffman was convicted. Then, the trial court continued discussing Hoffman's sentence by identifying aggravating and mitigating circumstances and pronouncing the actual sentence. Nowhere in its discussion of aggravating and mitigating circumstances,

12

did the trial court mention Hoffman's lack of remorse. Nor was his lack of remorse mentioned in the written sentencing statement.

There is, therefore, no evidence in the record that the trial court used Hoffman's lack of remorse as a consideration in imposing his sentence. The evidence showed that the trial court only discussed Hoffman's lack of remorse in determining whether he posed a threat to reoffend and should be considered a sexually violent offender pursuant to statute. We, therefore, conclude that Hoffman's appellate counsel could not be ineffective for not challenging the use of Hoffman's lack of remorse as an aggravating circumstance when there was no evidence to support such a challenge. Such an issue was not clearly stronger than the issues actually raised by appellate counsel on direct appeal. Hoffman has failed to prove that his appellate counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms. Further, because there is no evidence that his lack of remorse was used as an aggravating circumstance, Hoffman cannot show prejudice because there is no indication that the outcome of his direct appeal would have been any different had the issue been raised.

### III. Inappropriateness Argument

Hoffman contends that his appellate counsel was ineffective because he raised an Indiana Appellate Rule 7(B) challenge to Hoffman's sixty-year sentence, but made no effort to argue how Hoffman's sentence was inappropriate in light of the nature of the offense and the character of the offender. He asserts that, "[i]f appellate counsel had properly argued why the aggregate sentence is inappropriate, this [c]ourt would have had to explain why [sixty] years is not inappropriate." *Appellant's Br*. at 19. Hoffman claims

that based on the facts that he served in the Army, had no prior criminal history, and his offense was engaging in non-forcible sexual acts with a fourteen year old during one summer would have showed that his sixty-year sentence was inappropriate.

Claims of inadequate presentation of certain issues, as contrasted with denial of access to an appeal or waiver of issues, are the most difficult for defendants to advance and reviewing tribunals to support. *Overstreet*, 877 N.E.2d at 166 (citing *Bieghler,* 690 N.E.2d at 195). This is so because such claims essentially require the reviewing court to reexamine specific issues it has already adjudicated to determine "whether the new record citations, case references, or arguments would have had any marginal effect on their previous decision." *Id.* Further, an Indiana appellate court is not limited in its review of issues to the facts and cases cited and arguments made by the appellant's counsel. *Bieghler*, 690 N.E.2d at 195. We commonly review relevant portions of the record, perform separate legal research, and often decide cases based on legal arguments and reasoning not advanced by either party. *Id*. "While impressive appellate advocacy can influence the decisions appellate judges make and does make our task easier, a less than top notch performance does not necessarily prevent us from appreciating the full measure of an appellant's claim, or amount to a 'breakdown in the adversarial process that our system counts on to produce just results.'" *Id*. at 195-96 (quoting *Strickland v. Washington,* 466 U.S. 668, 696 (1984)).

In this case, even assuming that appellate counsel's briefing on the inappropriateness issue was not adequate, the panel of this court that decided Hoffman's direct appeal was not inhibited in its review of this issue. In the determination of whether Hoffman's sentence was inappropriate on direct appeal, this court conducted a thorough

review of Hoffman's character and took into account his lack of a prior criminal history and military service, but offset these with Hoffman's lack of remorse. *Pet'r's Ex.* 4 at 56. A thorough consideration of the nature of the offense was also conducted where the panel found that the nature of the offenses was "particularly heinous and disturbing" because Hoffman "preyed on an especially vulnerable, young boy after developing a close and trusting relationship with the boy's family[,]" used that relationship to "groom" the boy, and ultimately engaged in sexual abuse that escalated in severity "until [Hoffman] finally accomplished his goal of penetrating [the victim's] anus with his penis." *Id.* at 56-57. This court further considered that, after the abuse occurred, Hoffman conceived of a plan to maintain contact with the victim by driving him to the YOC each day and to attempt to keep the victim quiet about what Hoffman had done. *Id.* at 57. After looking at the nature of the offense and the character of the offender, this court determined that Hoffman's sentence was not inappropriate. *Id.*

Hoffman has not proven prejudice as he has not shown how, even if his appellate counsel had properly argued this issue, the result of his appeal would have been any different. Hoffman contends that, if his appellate counsel had properly argued why his sentence was inappropriate, this court would have had to explain why sixty years is not inappropriate. However, that is in fact what a panel of this court did on direct appeal. It looked to both the nature of Hoffman's offenses and his character and concluded that his sixty-year sentence was not inappropriate. Hoffman has not shown how this outcome would have been different had his appellate counsel's argument been more thorough. We therefore conclude that Hoffman has failed to show how his appellate counsel was

15

ineffective for not ensuring the DVD of his statement to police was included in the record on direct appeal, for not arguing that the trial court erroneously relied on Hoffman's lack of remorse when it sentenced him, and for not making a sufficient argument that his sentence was inappropriate in light of the nature of the offense and the character of the offender. The post-conviction court did not err in denying Hoffman's petition for post-conviction relief.

Affirmed.

ROBB, C.J., and RILEY, J., concur.